## Peter Stewart *v.* Chester & Darby Telford Road Company, Appellant.

*Negligence—Evidence—Turnpikes—Question for jury.*

Whether it was a proper and necessary precaution to hang a light upon a toll gate at night in order to protect travelers from coming in contact with the end of an unprotected pole is a question properly for the jury, and the fact that upon an old gate the same gate keeper and the same company had hung a light for that purpose was certainly evidence of the necessity of such a protection at the old gate and therefore properly admissible as evidence of the necessity for the same kind of protection at a new gate recently established across the road.

*Negligence — Contributory negligence—Turnpikes— Instructions of the court.*

The question of negligence of a turnpike company, in leaving on a dark night the exposed end of its gate unlighted, having been properly left to the jury, it was proper for the court to instruct the jury on the question of contributory negligence, as follows: " If there was any negligence contributory to the accident on the part of the plaintiff he cannot recover. But I do not say that he was bound to carry a lantern on a dark night. He would be bound to walk carefully wherever he was going and to avoid known obstructions, and if he knew the gate was there, then it would have been his duty to use more care than usual to avoid it," and in the general charge the jury was told " he must use all necessary precaution to avoid a collision or accident when walking on a dark night along a public road. . . . To enable him to recover you must find that there was negligence upon the part of the defendant and no contributory negligence upon the part of the plaintiff."

*Province of court and jury—Correction of mistake in charge.*

A judge has a right to correct a mistake made on the trial under a misapprehension of the facts without being charged with encouraging a verdict for either party.

*Evidence—Competency of witnesses—Arbitrators.*

Arbitrators before whom a case had been tried are competent to testify to the physical condition of a plaintiff after an injury.

Argued Nov. 17, 1896. Appeal, No. 51, Nov. T., 1896, by defendant, from judgment of C. P. Delaware Co., June T., 1894, No. 236, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Trespass to recover for injuries arising from the erection and maintenance of a certain toll gate upon land of the turnpike operated by defendant.   Before CLAYTON, P. J.

The appellant was incorporated under the act of April 29, 1874, and by purchase became possessed of the rights and franchises of the Darby & Chester Plank Road Company, incorporated by the act of April 14, 1851, subject to all the provisions of the act of January 26, 1849.   Under its charter the appellant was authorized to construct and operate a turnpike road, and construct and maintain suitable gates thereon for the collection of toll.

About 8 o'clock on the evening of April 23, 1894, the appellee was lawfully walking upon the turnpike in company with a friend.   The evening was dark and misty and it was with great difficulty that objects could be seen at any distance.   Hearing wagons approaching on the turnpike the appellee stepped to one side to avoid them and was struck in the eye by the end of a pole used as a gate.   The pole at the point of contact was about four and one half inches square.   It was located on the north side of the roadbed and at the time was parallel therewith.   Between the gate and the watchhouse on the south side of the roadbed the distance was between twenty-three and twenty-four feet.   On the north side of the gate was the track of a trolley road.   The gate was within the limits of the turnpike.   It was about eleven feet long and capable of being thrown across the road so as to allow but one team to pass the watchhouse at the same time.

On the night in question, at the time of the injury, there was no light at the gate or watchhouse, no guard at the end of the pole against which the appellee struck.   The end was raised about five and one half feet from the ground.   The trial judge left the question of the appellant's negligence and of the appellee's contributory negligence to the jury.

There was a verdict for the plaintiff of $750.   Defendant appealed.

*Errors assigned* were, (1, 2) in admitting evidence as to whether an old gate of the company at another point than where the accident occurred, and maintained but abolished prior thereto, was lighted at night; (3) in admitting evidence of

those who were not physicians but were two of the arbitrators before whom the case was originally tried, as to the condition of the plaintiff's leg; (4) in admitting evidence to prove that by examination of the records of the court of quarter sessions, nothing appeared to show that the defendant had complied with the act of 1874, giving the right to erect gates; (5–13) answers to points and instructions of the court on the question of negligence of defendant and contributory negligence of the plaintiff; (14, 15) in charge of the court as a whole in that it was alleged imperatively to impute negligence to defendant; (16) entry of judgment against defendant.

*Frank R. Savidge*, with him *O. B. Dickinson*, for appellant. —As to the reasonable and established rule of responsibility for turnpikes see Kieffer v. Hummelstown Borough, 151 Pa. 311; Fruh v. Phila., 1 Dist. Rep. 248; City v. Fischer, 111 Pa. 13. A sufficient portion of the middle of the turnpike only is kept in smooth condition and safe and convenient for travel. The rest is often left dangerous by reasons of ditches and obstructions of various kinds: Perkins v. Inhabitants of Fayette, 68 Maine, 152; Com. v. King, 13 Metc. 115; Blake v. Newfield, 68 Maine, 375; Keyes v. Village of Marcellus, 50 Mich. 439; City of Scranton v. Hill, 102 Pa. 378. A traveler cannot pass upon the side of the road with the same protection as is given in its center; City v. Gilliam, 30 P. L. J. 461. See also Elliott on Roads and Streets, 76. In cases involving obstructions, like the one at bar, it is held that cities are not liable for omitting to light their streets: Am. & Eng. Ency. of Law, title Highways, 380, note 1; Elliott on Roads and Streets, 458; Randall v. Railway Co., 106 Mass. 276; Freeport v. Isbell, 83 Ill. 440; McCamber v. Taunton, 100 Mass. 255. On the question of contributory negligence, see Robb v. Connellsville Borough, 26 W. N. C. 517; Phila. v. Smith, 23 W. N. C. 242; Beach on Contributory Negligence, sec. 77, p. 258. In all the testimony there was no doubt of plaintiff's knowledge of the new gate. If so, he could not recover: Winner v. Oakland Township, 158 Pa. 405. But whether he had knowledge of the gate or not he was guilty of contributory negligence: Corbalis v. Newberry Township, 25 W. N. C. 184;

*J. B. Hannum*, for appellee.—As to the responsibility of a turnpike company to warn travelers of danger threatened by obstructions and by suitable devices to direct them in a proper route, see Lancaster Ave. Co. v. Rhoads, 116 Pa. 377; Born v. Plank Road Co., 101 Pa. 336. It was proper to submit the question of contributory negligence of the plaintiff to the jury, as was done in this case: Merriman v. Phillipsburg Borough, 158 Pa. 78. What is and what is not negligence in a particular case is generally a question for the jury and not for the court. It always is when the measure of duty is ordinary and reasonable care: Kreider v. Road Co., 162 Pa. 537. The plaintiff was not bound to exercise extraordinary care: Fee v. Columbus Borough, 168 Pa. 382; Ringrose v. Bloomsburg, 167 Pa. 621.

OPINION BY WILLARD, J., December 7, 1896:

The appellants were the successors of another road company possessing the right to collect tolls and erect gates. That company had maintained a gate on the other side of the roadbed about one hundred feet distant from the new gate. The old gate had been taken down by the appellants and a new one erected but a few months before the injury, and the same person had charge of both gates. Whether it was a proper and necessary precaution to hang a light upon the gate at night in order to protect travelers from coming in contact with the end of the unprotected pole was a question properly for the jury, and the fact that upon the old gate the same gate keeper and the same company had hung a light for that purpose was certainly evidence of the necessity of such a protection at the old gate, and if so, why was it not evidence of the necessity of the same kind of protection at the new gate across the road? It was evidence to show that, but a short time before the injury, the company deemed it essential to display the light, and if deemed essential then, it was proper evidence to guide the jury in determining the question of the necessity of the light as a proper safeguard and protection at the time and place of the injury. The evidence was properly admitted.

Two of the arbitrators were called to prove the physical condition of the appellee after the injury. We know of no rule excluding such testimony, and as the whole question of erysipelas was excluded by the court from the consideration of the

jury, the appellant was not harmed. The fact that the witnesses were arbitrators certainly did not render them incompetent.

. The admission of the testimony of the clerk of quarter sessions of Delaware county to prove that the appellant had not complied with the act of 1874 by obtaining the necessary authority through the said court to enable it to erect gates did not harm the appellant's case. Proof was offered and admitted that the appellant had purchased and was the owner of the rights and franchises of another company formerly occupying the same road, and under its charter the right was granted to locate and erect gates, and the appellant was in the enjoyment of these rights and franchises. It is unnecessary, however, to pursue the subject. The court put the appellant in such position that the evidence was entirely immaterial, and charged the jury that the turnpike company had a perfect right to erect the gate.

The sixth and fifth assignments of error raise the important question in this case. As to the location of the gate, we do not think it was a question for the court or jury to decide. The right of location was vested by the legislature in the directors of the road, and this right having been committed to their discretion, they and they alone were the proper judges, and it was not the province of the judge or jury to say that it should have been located three feet or three inches to the right or left. Had the learned judge refused to affirm the appellant's first point, we would promptly reverse the judgment. His first answer to the point, as put, was entirely erroneous, but he answered it under a misapprehension of its meaning, and when properly enlightened by counsel and convinced of his error, he promptly affirmed the point. There is no merit in the appellant's contention that the inadvertent language of the judge in his answer influenced the jury. A judge certainly has a right to correct a mistake made on the trial under a misapprehension of the facts without being charged with encouraging a verdict for either party.

The location of the gate and the use of proper precautions to render it safe when erected are different questions. The law on the latter subject is well defined by Mr. Elliott in his work on Roads and Streets, at page 78: "The obligation resting on the

turnpike company is to make it reasonably safe to travel its road. This means more than that the traveled part of the way shall be kept safe, for where barriers or warnings are necessary to prevent a traveler, who exercises ordinary care and prudence, from going into danger alongside of and near the way, such barriers must be provided or such warnings given." The text above quoted is sustained by an array of most respectable authorities.

In this case we have a traveler on a dark night lawfully upon a turnpike road approaching its toll gate. The end of the gate or bar extended eleven feet from its pivot longitudinally along the road and in the direction of the approaching traveler. The end thereof is four and one half ($4\frac{1}{2}$) inches square, resting five and one half ($5\frac{1}{2}$) feet from the ground; the gate and watch house without a light or person in charge and the end of the gate or pole without a barrier or protection of any kind. The appellee, to avoid approaching vehicles, steps to one side and suddenly in the darkness comes in contact with this obstruction and is seriously injured. Whether the appellant was guilty of the want of ordinary care under the circumstances was for the jury to determine under proper instructions. In his general charge the learned judge instructed the jury "now, it will be for you to say, whether the construction of this turnpike gate at the place where it was constructed was an unreasonable construction, a dangerous one, and whether extra precautions ought to have been taken to guard it." We think there was no error in the submission of the appellant's negligence to the jury. As to the negligence of the appellee contributing to the injury, his duty was correctly stated in the answer to the appellant's third point, and the jury were instructed that "if there were any negligence contributory to the accident upon the part of the plaintiff he cannot recover. But I do not say that he was bound to carry a lantern on a dark night. He would be bound to walk carefully wherever he was going and to avoid known obstructions, and if he knew the gate was there, then it would have been his duty to use more care than usual to avoid it," and in the general charge the jury were told "he must use all necessary precaution to avoid a collision or accident when walking on a dark night along the public road. . . . To enable him to recover you must find that there was negligence upon the part

of the defendant and no contributory negligence upon the part of the plaintiff." The defendant's fourth point was, viz: " It was the duty of the plaintiff to carry a light or to take extra precaution in venturing upon a public road on a dark night, and for his failure to do so in the present case he is properly chargeable with contributory negligence and the verdict should be for the defendant." The judge answered, " This seems to be in the disjunctive. So far as the taking of extra precaution is concerned, I affirm it. The other part I disaffirm, that which says he was bound to carry a light." The defendant's fifth point was, viz: " From the plaintiff's knowledge of the road and its gate he took the risk of passing it upon a dark night, and cannot complain of an injury even if the result of the company's negligence, to which he contributed, and the verdict should be for the defendant." The judge answered, " As to his knowledge of the road I decline to say that he had or had not. He said he had no knowledge of the gate being there; at least, that is my recollection. He said he knew the old one. But, as I said before, if this accident was the result of negligence on his part he cannot recover." We think the answers to these points, together with the general charge on the subject, was a sufficient instruction to the jury as to what constituted contributory negligence on the part of the plaintiff.

Soon after the injury the appellee was visited by Dr. Evans, who said in his testimony that he found him suffering from an attack of traumatic erysipelas. Testimony of other physicians was admitted as to the continuation of this disease for a long time. To the admission of this testimony the appellant's counsel did not object on the trial and the judge explicitly charged the jury to disregard every word of the testimony on that subject in arriving at their verdict. This ought to have been sufficient without further comment.

We deem it unnecessary to consider all of the assignments of error as there are really but two questions in this case, first, was the question of the negligence of the defendant properly submitted to the jury; second, was the question of contributory negligence on the part of the plaintiff properly submitted; and having decided these two questions in the affirmative, it is unnecessary to pursue the question further. In considering the remarks of counsel upon the attitude of the trial judge during

the trial, which we deem uncalled for and unwarranted, we do not hesitate to say from an examination of the entire record that the case was fairly and impartially tried and properly submitted for the consideration of the jury. The judgment is affirmed.